UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MELISSA JAVORSKI,                  :
                                   :
          Plaintiff,               :CIVIL ACTION NO. 3:06-CV-1071
                                   :
          v.                       :
                                   :(JUDGE CONABOY)
NATIONWIDE MUTUAL                  :
INSURANCE COMPANY,                 :
                                   :
          Defendant.               :
_____

**MEMORANDUM**

In this Memorandum, we consider the two pending motions in
this case: Defendant's Motion to Dismiss, (Doc. 2), and Plaintiff's
Motion to Remand, (Doc. 3).  In the underlying action, Plaintiff
raises claims of Breach of Contract and Bad Faith against Defendant
premised on Defendant's handling of Plaintiff's underinsured
motorist claim she filed with Defendant following an automobile
accident in which she was injured.  (Doc. 1 Attachment.)

Because it is jurisdictional, we will first consider
Plaintiff's Motion to Remand, (Doc. 3), which requires us to
address the issue of whether and when removal is appropriate where
no specific amount in controversy is pled in a plaintiff's
complaint filed in state court.  Having reviewed the parties'
filings and relevant law, we conclude that diversity jurisdiction
is proper in this case because both the citizenship diversity and
amount in controversy requirements of 28 U.S.C. § 1332 are met.
Therefore, we deny Plaintiff's Motion to Remand.

1

Having confirmed jurisdiction, we consider Defendant's Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 2). Defendant asserts that the record demonstrates that Plaintiff's claim was properly investigated and settled in a timely and professional manner and Plaintiff's Complaint, as a matter of law, cannot support her claims. (Docs. 7, 11.) For the reasons discussed below, we do not find as a matter of law that Plaintiff's Complaint fails to state a claim upon which relief may be granted and, therefore, we deny Defendant's Motion to Dismiss.

## I. Background

### A.   *The Accident and Plaintiff's Condition*

The following facts are derived from Plaintiff's Complaint, (Doc. 1 Att.). Plaintiff was injured in an automobile accident on April 26, 2004, in Wyoming County, Pennsylvania. While traveling south on Route 29 en route to College Misericordia, Abdul Hussain, M.D., entered State Route 29 from a parking lot and, for unknown reasons, traveled across the northbound lane into the southbound lane striking the car behind Plaintiff's driven by Raymond Kuzma. After striking the Kuzma vehicle, Hussain's vehicle continued traveling northbound in the southbound lane and struck Plaintiff's vehicle head-on.

At the time of the accident, Plaintiff was operating a 1990 Toyota Camry owned by her father, John Javorski. There were also two other vehicles in the household owned by her mother, Ann Marie

Javorski.  All three vehicles were insured by Nationwide.

Plaintiff was treated at the scene by the Tunkhannock Community Ambulance.  She was found in the driver's seat and had not moved.  The ambulance crew described her as appearing confused and she complained of chest pain, left knee pain and bilateral wrist pain.  She was immobilized on a backboard, extricated from the vehicle on the backboard and taken by ambulance to the Tyler Memorial Hospital Emergency Room.

Complaining of right rib and shoulder pain and left knee pain, Plaintiff's diagnosis was multiple contusions and Plaintiff was provided with Darvocet for pain.  She was instructed to do deep breathing exercises and not to attend classes at College Misericordia for several days.

Two days later, Plaintiff went to her treating physician, John Gardner, M.D., whose diagnosis was chest pain, rule out fracture, shoulder contusion and left knee pain.

On June 3, 2004, Plaintiff went to the Geisinger Clinic Nephrology Department for a follow-up visit with Evan Norfolk, M.D., regarding kidney problems which pre-dated the accident. Plaintiff's kidney problems were related to long-term health problems.  She was diagnosed with Wegener's Granulomatosis in 1992 - a disease which caused pulmonary problems and eventually

destroyed both of her native kidneys.[1]  Plaintiff had a kidney transplant at Geisinger Medical Center in the Spring of 1994. After several hospitalizations in 1994, she was hospitalized at Geisinger in 1997 and then again three years later from December 15, 2000, through December 22, 2000, at Stanford University Hospital in California.  Following her return from California, Plaintiff was hospitalized at First Hospital from February 27, 2001, through March 7, 2001, with a diagnosis of major depression and social anxiety disorder.  A renal scan performed on August 3, 2001, was interpreted as normal with normal profusion of the transplanted kidney.  With this finding, Plaintiff had experienced no kidney difficulties for nearly four years.

In January 2002, Plaintiff had some renal problems.  At March, April and September 2002 follow-up visits, Plaintiff's nephrology exams were normal.[2]

During a visit to Dr. Norfolk on August 11, 2003, Plaintiff

---

[1]  According to the National Institute of Allergy and Infectious Diseases, National Institutes of Health, "Wegener's granulomatosis is an uncommon disease, in which the blood vessels are inflamed (vasculitis).  This inflammation damages important organs of the body by limiting blood flow to those organs and destroying normal tissue.  Although the disease can involve any organ system, Wegener's granulomatosis mainly affects the respiratory tract . . . and kidneys.  Wegener's Granulamatosis, NIAID Fact Sheets, www.niaid.nih.gov/factsheets/wegeners.htm.

[2]  The Complaint indicates that Plaintiff's March 7, 2002, visit was a follow-up nephrology treatment "after the attempted suicide."  (Doc. 1 Att. ¶ 18.)  Plaintiff does not provide any further information about the attempted suicide.

complained of some syncope,[3] and Dr. Norfolk referred her to her primary care physician.  Otherwise, her renal function was normal. Her last visit to Dr. Norfolk before the accident occurred on April 6, 2004.  At that time she complained of knee pain and problems with ambulating.  Plaintiff's renal functioning was reportedly fine and she was referred to the Orthopaedic Department for her knee complaints.

At her next visit on June 3, 2004 - the first after the accident which occurred on April 26, 2004 - Plaintiff's Creatinine level was above normal and she complained of chronic fatigue. Because of the increased Creatinine level, Dr. Norfolk scheduled her for a renal biopsy.  She was admitted to Geisinger as an inpatient on June 3rd and was released on June 4th.  The biopsy was positive for rejection according to the discharge summary.

Plaintiff returned to be evaluated by Dr. Norfolk on June 11, 2004.  He reviewed the pathology reports which resulted in his diagnosis of rejection as well as chronic nephropathy.[4]  Dr. Norfolk indicated Plaintiff was suffering from a recent rejection with increased pain and Creatinine levels.

From the time of this diagnosis, Plaintiff has regularly been

---

[3]  The American Heart Association defines syncope as "a temporary loss of consciousness and posture described as 'fainting' or 'passing out.'"   www.americanheart.org

[4]  Nephropathy is defined as "any kidney disease," www.medterms.com, chronic nephropathy as "progressive kidney disease," aspin.asu.edu/geneinfo/glos-c.htm.

seen and treated for rejection and related and other medical problems including fibromyalgia.  At times Plaintiff was treated on an inpatient basis.  In the summer of 2005, Plaintiff was also diagnosed with shizophrenia paranoid type and bulimia nervosa.  She was hospitalized for these conditions on both a voluntary and involuntary basis.

Some time between August of 2005 and January of 2006 Plaintiff was required to start dialysis treatments - treatments which continued at the time the Complaint was filed in this case on May 26, 2006.  At the time the case was filed, Plaintiff was awaiting a donor kidney for transplant.

**B.    *Nationwide's Conduct***

At the time of the accident, Plaintiff was an insured under two automobile policies issued by Nationwide.  Policy 5837C649497 provided underinsured motorist limits of $100,000/$300,000.  The policy was stacked and covered two vehicles.  Policy 5837B225456 had the same limits, was stacked and covered one vehicle. Therefore, Plaintiff was entitled to a maximum of $300,000 underinsured motorist benefits.

Plaintiff placed Defendant on notice of Plaintiff's underinsured motorist claim on December 7, 2004.  Defendant denied coverage under one of the policies by letter dated January 13, 2005.  By letter dated January 17, 2005, Plaintiff informed Defendant that the lack of coverage was not conceded and more

investigation was necessary.  By letter postmarked February 25, 2005, Defendant informed Plaintiff that it changed its position and would provide coverage under both policies.

By letter dated February 22, 2005, Plaintiff made a claim, with supporting medical records, for fibromyalgia and aggravation of pre-existing depression as a result of the accident.  Following the receipt of an expert pathology report on March 29, 2005, Plaintiff notified Defendant that her post-accident kidney rejection, dialysis and need for a renal transplant were caused by the accident.  In the correspondence, she also made a demand for the UIM policy limits.

The demand was valid for thirty days, and Defendant did not respond within that period except to notify Plaintiff that it had appointed counsel to defend the claim.  Defendant appointed Michael Nelson, Esq., as counsel on Plaintiff's underinsured motorist claim.

Defendant did not comply with the neutral arbitrator provision of the policy in that it did not respond to Plaintiff's suggestions for a neutral arbitrator or suggest one of its own.  Defendant participated in the selection of a neutral arbitrator only after Plaintiff filed a Petition to Compel Arbitration and Appoint Neutral Arbitrator.  A neutral arbitrator was chosen in June 2005.

Regarding the gathering of medical records, Plaintiff signed an authorization on February 25, 2005.  In June 2005, Defendant

7

attempted to gather records from Geisinger but needed a specific release form from Plaintiff.  By letter of June 24, 2005, Defendant informed Plaintiff that it was still awaiting records from Geisinger, Tunkhannock Community Ambulance, Advanced Pain Management Specialists, Tyler Memorial Hospital Radiology, Riverside Rehabilitation and several doctors.  Plaintiff had sent records from many of these sources to Defendant on February 22, 2005.

In July 2006, Defendant inquired by telephone whether a claim for psychiatric injuries was being made.  Plaintiff had made this claim on February 22, 2005.  Defendant's record gathering was ongoing through February 2006.

Defendant submitted expert reports by the January 31, 2006, deadline set by the arbitration panel.  The kidney experts - Doctors Elfenbein and Zappacosta - concluded that Plaintiff suffered from chronic rejection, rather than acute rejection traceable to the accident.  The psychiatrist who performed the IPE, Dr. Toborowlsky, concluded that Plaintiff's psychiatric diagnoses predated the accident and her condition afterwards was very likely little different than it would have been had the accident not happened.  Defendant's rheumatologist, Dr. Kohn, reported that, because he had been forwarded only psychiatric records, his evaluation was somewhat handicapped.  Nevertheless, Dr. Kohn concluded that Plaintiff did not suffer from fibromyalgia as a

result of the accident.

Plaintiff's experts were critical of Defendant's experts and concluded that Plaintiff's kidney rejection and fibromyalgia resulted from the accident.

By letter dated February 20, 2006, Defendant requested that the March 28th and 30th dates set for the arbitration hearing be continued, suggesting that the parties mediate the dispute. Plaintiff agreed to mediation by letter of February 23, 2006 – but only if the mediation could occur before the previously established arbitration dates.

Defendant did not request or conduct a statement under oath from Plaintiff during the pendency of the claim.  Its first request to meet with Plaintiff to assess her condition was made by letter dated February 23, 2006.

The parties attended mediation on March 15, 2006, and reached a mediated settlement in the amount of $285,000 – $15,000 less than the policy limit that had been demanded on March 29, 2005.

## C.   *Procedural History*

Based on the above facts, Plaintiff filed a Complaint in the Court of Common Pleas of Luzerne County, Pennsylvania, on April 28, 2006, alleging bad faith and breach of contract.  (*See* Doc. 1 Att.) Defendant removed the action to the United States District Court for the Middle District of Pennsylvania on May 25, 2006.  (Doc. 1.)

9

The twenty-five examples of wrongful conduct identified in Plaintiff's Complaint fall into three categories: 1) Defendant's failure to promptly and properly investigate and evaluate Plaintiff's claim; 2) Defendant's failure to promptly communicate with Plaintiff at various times on a variety of issues; and 3) Defendant's improper refusal to pay Plaintiff's claim for one year.

Defendant filed a motion to dismiss Plaintiff's Complaint on May 30, 2006, (Doc. 2), and a supporting brief on June 9, 2006, (Doc. 7).  Plaintiff filed an opposition brief on June 15, 2006, (Doc. 9), and Defendant filed a reply on June 27, 2006, (Doc. 11). Therefore, this motion is fully briefed and ripe for disposition.

Plaintiff filed a motion to remand on May 31, 2006, (Doc. 3), accompanied by a supporting brief, (Doc. 4).  Defendant filed an opposition brief on June 1, 2006, (Doc. 5).  Plaintiff did not file a reply brief and the time for such filing has passed.  Therefore, Plaintiff's motion to remand is ripe for disposition.

## II. Discussion

Before addressing Defendant's Motion to Dismiss, (Doc. 2), as a threshold matter, we will address Plaintiff's Motion to Remand, (Doc. 3), to determine whether jurisdiction is proper in this Court.

### A.   *Motion to Remand*

Defendant removed the action to this court pursuant to 28 U.S.C. § 1332, asserting that complete diversity exists between the

10

parties and the amount in controversy exceeds $75,000.  (Doc. 1.)

Plaintiff's Motion to Remand contests only the amount in

controversy, stating that Defendant has not supplied any support

for damages in excess of $75,000.  (Doc. 3.)  On this basis,

Plaintiff asserts that this case should be remanded to the Court of

Common Pleas of Luzerne County.  (*Id.*)  For the reasons that

follow, we disagree with Plaintiff and find that jurisdiction is

proper in this Court.

The dispute arises because Plaintiff's Complaint does not set

out an amount in controversy. (Doc. 1 Att.)  Rather, in the

Complaint Plaintiff "demands judgment . . . in an amount in excess

of the mandatory arbitration limits of Luzerne County, together

with punitive damages, costs, interest and attorney's fees and all

other relief this Court deems just and proper." (*Id.* at 55, 56.)

Thus, to decide whether removal was proper, we must determine if

and when an open ended claim satisfies the amount in controversy

requirement of § 1332.

In determining whether this Court should exercise removal

jurisdiction, we are guided by well-recognized general principles.

The defendant's right to remove pursuant to 28 U.S.C. § 1441 is to

be determined from the plaintiff's pleading at the time of the

petition for removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537

(1939) (citations omitted).  The defendant bears the burden of

showing that federal jurisdiction is proper. *Id.* at 540.  "[T]he

11

removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir. 1985).  28 U.S.C. § 1447 mandates remand where the District Court lacks subject matter jurisdiction.

While the general federal rule is to decide the amount in controversy from the complaint itself, when the amount is not specified, the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated. *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) (citations omitted).  If punitive damages are sought, a court may include them in the amount in controversy unless the demand is "patently frivolous and without foundation." *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004).  "Punitive damage claims are *per se* patently frivolous and without foundation if they are unavailable as a matter of state substantive law." *Id.* (citations and internal quotation omitted).  In *Golden*, the court explained that "[i]f appropriately made, . . . a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value  of the plaintiff's claim is below the statutory minimum." *Id.*

Defendant maintains that the amount in controversy requirement is met here because Plaintiff is seeking punitive damages which are

available under Pennsylvania law if Defendant has acted in bad faith.  (Doc. 5 at 4.)  Defendant then calculates what maximum punitive damage award would be available pursuant to *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003).  Based on the $300,000 policy limit in this case and *Campbell's* guidance regarding acceptable punitive damage awards, Defendant asserts that a punitive damage award of $2.7 million could be upheld as constitutional.  (Doc. 5 at 5.)

In Plaintiff's brief supporting the motion, she argues that Defendant has not made any calculation to sustain its burden. (Doc. 4 at 3-4.)  Plaintiff did not file a reply brief contradicting Defendant's calculation or the legal authority upon which Defendant relies.

Based on relevant authority, we conclude that Defendant has satisfied its burden.  Although the *Campbell* ratio does not apply because compensatory damages are not sought, (*see* Doc. 1 Att.), and the formula calls for a comparison of compensatory and punitive damages ("in practice few awards exceeding a single-digit ratio between compensatory and punitive damages will satisfy due process," *Campbell*, 538 U.S. at 425), the fact that Plaintiff seeks punitive damages is sufficient.[5]  As required by *Golden*, here

---

[5]  We note that in addition to punitive damages, Plaintiff demands judgment "in excess of the mandatory arbitration limits of Luzerne County," (Doc. 1 Att.), which is $50,000, (Doc. 3 ¶ 6).  If we apply the *Campbell* formula using this figure, a punitive damage award of $450,000 would be constitutionally acceptable - an amount

Plaintiff requests the award of punitive damages which are available for a bad faith cause of action pursuant to 42 Pa. C.S. § 8371(2).  Because we find that the amount in controversy requirement is met in this case, Plaintiff's Motion to Remand, (Doc. 3), is denied.

**B.   Motion to Dismiss**

Jurisdiction established, we turn now to Defendant's Motion to Dismiss, (Doc. 2), filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant asserts that Plaintiff has failed to state a claim upon which relief may be granted on both the Breach of Contract and Bad Faith counts.  For the reasons that follow, we conclude that Defendant has not met its burden of showing that Plaintiff has failed to state a claim.  Therefore, Defendant's motion to dismiss is denied.

**1.   Motion to Dismiss Standard**

When considering a motion to dismiss based on failure to state a claim, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

---

well in excess of the $75,000 minimum amount in controversy requirement.

entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46
(1957).  Thus, the test is to determine whether, under any
reasonable reading of the complaint, the plaintiff may be entitled
to relief.  *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.
1993).  Put another way, the court must decide whether, even if the
plaintiff were able to prove all of his allegations, he would be
unable to prevail.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549
F.2d 884, 891 (3d Cir. 1977).

     In rendering a decision on a motion to dismiss, a court must
accept the veracity of the plaintiffs' allegations and all
reasonable inferences which can be drawn from them.  *Scheuer v.
Rhodes*, 416 U.S. 232, 236 (1974);  *Markowitz v. Northeast Land Co.*,
906 F.2d 100, 103 (3d Cir. 1990); *White v. Napoleon*, 897 F.2d 103,
106 (3d Cir. 1990).  The burden is on the moving party to show that
there is no actionable claim in a Rule 12(b)(6) motion to dismiss
for failure to state a claim.  *Johnsrud v. Carter*, 620 F.2d 29, 33
(3d Cir. 1980).

     ***2.  Bad Faith***

     Defendant seeks dismissal of Plaintiff's bad faith claim based
on its assertion that the allegations in the Complaint establish
that it acted reasonably in handling Plaintiff's underinsured
motorist claim.

     An action for bad faith in Pennsylvania is governed by 42 Pa.
C.S. § 8371 which provides:

>
> In an action arising under an insurance
> policy, if the court finds that the insurer
> has acted in bad faith toward the insured,
> the court may take all of the following
> actions:
>
> (1) Award interest on the amount of the claim
> from the date the claim was made by the
> insured in an amount equal to the prime rate
> of interest plus 3%.
>
> (2) Award punitive damages against the
> insurer.
>
> (3) Assess court costs and attorney fees
> against the insurer.

42 Pa. C.S. § 8371.  The statute does not define what constitutes bad faith.  Rather, "[b]ad faith claims are fact specific and depend on the conduct of the insurer *vis a` vis* the insured." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. 2006) (citing *Williams v. Nationwide Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. 2000)).  "Bad faith encompasses a wide variety of objectionable conduct . . . [and] includes lack of good faith investigation into facts, and failure to communicate with the claimant." *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004); *see also O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. 1999).

Conduct which constitutes a violation of Unfair Insurance Practices Act ("UIPA") may be considered when deciding whether an insurer acted in bad faith.  *Id.*  Under the UIPA, if "performed with such frequency as to indicate a business practice," the following are included in actions which may constitute unfair claim

16

settlement practices: "failing to act promptly upon written or oral communications with respect to claims arising under insurance policies," 40 P.S. § 1171.5(10)(ii); "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," 40 P.S. § 1171.5(10)(iii); and "refusing to pay claims without conducting a reasonable investigation based upon all available information," 40 P.S. § 1171.5(10)(iv).

We agree with Defendant that an insurance company does not have a heightened duty toward the insured when the insured files an underinsured motorist claim. (*See* Doc. 11 at 9.)  However, when viewed in the light most favorable to Plaintiff, the record indicates possibly unacceptable delays in acknowledging the right to benefits on one of the policies.  Defendant was put on notice of the UIM claim on both policies on December 7, 2004, denied the claim under one of the policies on January 13, 2005, and informed Plaintiff that it reversed its position by letter postmarked February 25, 2005, *see supra* pp. 6-7: facts which may indicate questionable investigation and communication practices. Furthermore, questionable communication regarding Plaintiff's demand and the chronology of Defendant's record gathering, *see supra* pp. 7-9, also may suggest questionable claims handling practices which can be explored through discovery.  Thus, we conclude this is a case where some discovery is needed regarding

17

Defendant's handling of Plaintiff's underinsured motorist claim and dismissal is not proper at this stage of the proceedings

### 3.   *Breach of Contract*

Defendant asserts that the Court should dismiss Plaintiff's Breach of Contract claim because Plaintiff has failed to assert the elements necessary to maintain this cause of action.  For the reasons that follow, we find that dismissal of Plaintiff's Breach of Contract claim is not proper.

Under Pennsylvania law, "a plaintiff seeking to proceed with a breach of contract claim must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)).

Defendant argues that Plaintiff has not satisfied the second and third elements of a breach of contract claim.  (Doc. 7 at 7-8.) First, Defendant asserts there can be no breach because the claim was ultimately settled.  Relying on *Galko v. Harleysville Pennland Ins. Co.*, 71 Pa. D.&C. 4th 236 (Lacka. Cty. 2005), Defendant also contends that because Defendant paid Plaintiff $285,000 of the $300,000 available under the contract, the only damages Plaintiff has asserted have already been paid.  (Doc. 7 at 9.)

Regarding the breach element of a contract claim, the

18

Pennsylvania Supreme Court stated

> Breach of the obligation to act in good faith
> constitutes a breach of the insurance
> contract for which an action in assumpsit
> will lie.  Therefore, where an insurer acts
> in bad faith, the insured is entitled to
> recover such damages sufficient to return it
> to the position it would have been in but for
> the breach.

*Birth Center v. St. Paul Companies, Inc.*, 787 A.2d 376, 385 (Pa. 2001) (internal quotation omitted).

While we agree with Defendant that there are several distinguishing factors between the case at bar and *Birth Center*, (*see* Doc. 11 at 5-8), the court did not specifically limit its discussion of the relationship of the breach element of a contract claim and bad faith.  *See* 787 A.2d at 385.  Because we concluded above that Plaintiff's claim for bad faith may go forward, at this stage of the proceedings, we cannot say that Defendant has shown there is no set of circumstances under which Plaintiff can establish the breach element of her breach of contract claim.

The third element of Plaintiff's breach of contract claim is a closer question.  Recognizing that "the purpose of damages in a contract action is to return the parties to the position they would have been in but for the breach," 787 A.2d at 385, Plaintiff does not specifically seek compensatory damages or otherwise identify what would be required in the way of damages to make her whole. However, under the Federal Rules of Civil Procedure, a contract cause of action need not be pleaded with specificity.  In her

19

Complaint, for Breach of Contract Plaintiff demands "judgment . . . in an amount in excess of the mandatory arbitration limits of Luzerne County, together with punitive damages, costs, interest and attorney's fees and all other relief this Court deems just and proper." (Doc. 1 Att.)  The relaxed federal pleading standard and the fact that at least one Pennsylvania case has held that a cause of action exists even if no compensable loss can be shown because any breach gives rise to at least nominal damages, *Grabowksi v. Quigley*, 684 A.2d 610, 617 (Pa. Super. 1996), we will allow this claim to go forward.

### III. Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss, (Doc. 2), is DENIED and Plaintiff's Motion to Remand, (Doc. 3), is DENIED.  An appropriate Order follows.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge


DATED: August 2, 2006

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MELISSA JAVORSKI,                    :
                                     :
          Plaintiff,                 :CIVIL ACTION NO. 3:06-CV-1071
                                     :
          v.                         :
                                     :(JUDGE CONABOY)
NATIONWIDE MUTUAL                    :
INSURANCE COMPANY,                   :
                                     :
          Defendant.                 :
_____

**ORDER**

AND NOW, THIS 2nd DAY OF AUGUST 2006, FOR THE REASONS
DISCUSSED IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED
THAT:

     1.   Defendant's Motion to Dismiss, (Doc. 2), is DENIED;

     2.   Plaintiff's Motion to Remand, (Doc. 3), is DENIED;

     3.   The Clerk of Court is directed to mark the docket.


                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge