UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MELISSA JAVORSKI,                    :
                                     :
           Plaintiff,                :CIVIL ACTION NO. 3:06-CV-1071
                                     :
           v.                        :
                                     :(JUDGE CONABOY)
NATIONWIDE MUTUAL                    :
INSURANCE COMPANY,                   :
                                     :
           Defendant.                :
_____

**<u>MEMORANDUM</u>**

Here we consider Defendant Nationwide Mutual Insurance Company's Motion to Disqualify David J. Selingo, Esquire and Attorney Selingo's Firm, (Doc. 27).  With this motion, Defendant seeks disqualification based on the assertions that continued representation will violate Pennsylvania Rules of Professional Conduct addressing conflict of interest and both the Professional Rules and Local Rules of the Middle District of Pennsylvania addressing attorney as witness.  (*Id.*)  On September 22, 2006, Defendant filed a supporting brief with the motion, (Doc. 23), Plaintiff filed a responsive brief on September 28, 2006 (Doc. 32), and Defendant filed a reply on October 13, 2006, (Doc. 41).  Therefore, this matter has been fully briefed and is ripe for disposition.  For the reasons discussed below, we conclude that disqualification is not appropriate at this stage of the proceedings and deny Defendant's motion.

1

## I. Background[1]

### A.   *The Accident and Plaintiff's Condition*

The following facts are derived from Plaintiff's Complaint, (Doc. 1 Att.).  Plaintiff was injured in an automobile accident on April 26, 2004, in Wyoming County, Pennsylvania.  While traveling south on Route 29 en route to College Misericordia, Abdul Hussain, M.D., entered State Route 29 from a parking lot and, for unknown reasons, traveled across the northbound lane into the southbound lane striking the car behind Plaintiff's driven by Raymond Kuzma. After striking the Kuzma vehicle, Hussain's vehicle continued traveling northbound in the southbound lane and struck Plaintiff's vehicle head-on.

At the time of the accident, Plaintiff was operating a 1990 Toyota Camry owned by her father, John Javorski.  There were also two other vehicles in the household owned by her mother, Ann Marie Javorski.  All three vehicles were insured by Nationwide.

Plaintiff was treated at the scene by the Tunkhannock Community Ambulance.  She was found in the driver's seat and had not moved.  The ambulance crew described her as appearing confused and she complained of chest pain, left knee pain and bilateral wrist pain.  She was immobilized on a backboard, extricated from the vehicle on the backboard and taken by ambulance to the Tyler

---

[1]   Unless otherwise noted, the Background section is taken from the Court's Memorandum and Order of August 2, 2006, (Doc. 16).

Memorial Hospital Emergency Room.

Complaining of right rib and shoulder pain and left knee pain, Plaintiff's diagnosis was multiple contusions and Plaintiff was provided with Darvocet for pain.  She was instructed to do deep breathing exercises and not to attend classes at College Misericordia for several days.

Two days later, Plaintiff went to her treating physician, John Gardner, M.D., whose diagnosis was chest pain, rule out fracture, shoulder contusion and left knee pain.

On June 3, 2004, Plaintiff went to the Geisinger Clinic Nephrology Department for a follow-up visit with Evan Norfolk, M.D., regarding kidney problems which pre-dated the accident. Plaintiff's kidney problems were related to long-term health problems.  She was diagnosed with Wegener's Granulomatosis in 1992 - a disease which caused pulmonary problems and eventually destroyed both of her native kidneys.[2]  Plaintiff had a kidney transplant at Geisinger Medical Center in the Spring of 1994. After several hospitalizations in 1994, she was hospitalized at

---

[2]  According to the National Institute of Allergy and Infectious Diseases, National Institutes of Health, "Wegener's granulomatosis is an uncommon disease, in which the blood vessels are inflamed (vasculitis).  This inflammation damages important organs of the body by limiting blood flow to those organs and destroying normal tissue.  Although the disease can involve any organ system, Wegener's granulomatosis mainly affects the respiratory tract . . . and kidneys.  Wegener's Granulomatosis, NIAID Fact Sheets, www.niaid.nih.gov/factsheets/wegeners.htm.

Geisinger in 1997 and then again three years later from December 15, 2000, through December 22, 2000, at Stanford University Hospital in California.  Following her return from California, Plaintiff was hospitalized at First Hospital from February 27, 2001, through March 7, 2001, with a diagnosis of major depression and social anxiety disorder.  A renal scan performed on August 3, 2001, was interpreted as normal with normal profusion of the transplanted kidney.  With this finding, Plaintiff had experienced no kidney difficulties for nearly four years.

In January 2002, Plaintiff had some renal problems.  At March, April and September 2002 follow-up visits, Plaintiff's nephrology exams were normal.[3]

During a visit to Dr. Norfolk on August 11, 2003, Plaintiff complained of some syncope,[4] and Dr. Norfolk referred her to her primary care physician.  Otherwise, her renal function was normal. Her last visit to Dr. Norfolk before the accident occurred on April 6, 2004.  At that time she complained of knee pain and problems with ambulating.  Plaintiff's renal functioning was reportedly fine and she was referred to the Orthopaedic Department for her knee

---

[3]  The Complaint indicates that Plaintiff's March 7, 2002, visit was a follow-up nephrology treatment "after the attempted suicide."  (Doc. 1 Att. ¶ 18.)  Plaintiff does not provide any further information about the attempted suicide.

[4]  The American Heart Association defines syncope as "a temporary loss of consciousness and posture described as 'fainting' or 'passing out.'"   www.americanheart.org

complaints.

At her next visit on June 3, 2004 - the first after the accident which occurred on April 26, 2004 - Plaintiff's Creatinine level was above normal and she complained of chronic fatigue. Because of the increased Creatinine level, Dr. Norfolk scheduled her for a renal biopsy. She was admitted to Geisinger as an inpatient on June 3rd and was released on June 4th. The biopsy was positive for rejection according to the discharge summary.

Plaintiff returned to be evaluated by Dr. Norfolk on June 11, 2004. He reviewed the pathology reports which resulted in his diagnosis of rejection as well as chronic nephropathy.[5] Dr. Norfolk indicated Plaintiff was suffering from a recent rejection with increased pain and Creatinine levels.

From the time of this diagnosis, Plaintiff has regularly been seen and treated for rejection and related and other medical problems including fibromyalgia. At times Plaintiff was treated on an inpatient basis. In the summer of 2005, Plaintiff was also diagnosed with shizophrenia paranoid type and bulimia nervosa. She was hospitalized for these conditions on both a voluntary and involuntary basis.

Some time between August of 2005 and January of 2006 Plaintiff was required to start dialysis treatments - treatments which

---

[5] Nephropathy is defined as "any kidney disease," www.medterms.com, chronic nephropathy as "progressive kidney disease," aspin.asu.edu/geneinfo/glos-c.htm.

continued at the time the Complaint was filed in this case on May 26, 2006.  At the time the case was filed, Plaintiff was awaiting a donor kidney for transplant.

**B.    *Nationwide's Conduct***

At the time of the accident, Plaintiff was an insured under two automobile policies issued by Nationwide.  Policy 5837C649497 provided underinsured motorist limits of $100,000/$300,000.  The policy was stacked and covered two vehicles.  Policy 5837B225456 had the same limits, was stacked and covered one vehicle. Therefore, Plaintiff was entitled to a maximum of $300,000 underinsured motorist benefits.

Plaintiff placed Defendant on notice of Plaintiff's underinsured motorist claim on December 7, 2004.  Defendant denied coverage under one of the policies by letter dated January 13, 2005.  By letter dated January 17, 2005, Plaintiff informed Defendant that the lack of coverage was not conceded and more investigation was necessary.  By letter postmarked February 25, 2005, Defendant informed Plaintiff that it changed its position and would provide coverage under both policies.

By letter dated February 22, 2005, Plaintiff made a claim, with supporting medical records, for fibromyalgia and aggravation of pre-existing depression as a result of the accident.  Following the receipt of an expert pathology report on March 29, 2005, Plaintiff notified Defendant that her post-accident kidney

rejection, dialysis and need for a renal transplant were caused by the accident.   In the correspondence, she also made a demand for the UIM policy limits.

The demand was valid for thirty days, and Defendant did not respond within that period except to notify Plaintiff that it had appointed counsel to defend the claim.   Defendant appointed Michael Nelson, Esq., as counsel on Plaintiff's underinsured motorist claim.

Defendant did not comply with the neutral arbitrator provision of the policy in that it did not respond to Plaintiff's suggestions for a neutral arbitrator or suggest one of its own.   Defendant participated in the selection of a neutral arbitrator only after Plaintiff filed a Petition to Compel Arbitration and Appoint Neutral Arbitrator.   A neutral arbitrator was chosen in June 2005.

Regarding the gathering of medical records, Plaintiff signed an authorization on February 25, 2005.   In June 2005, Defendant attempted to gather records from Geisinger but needed a specific release form from Plaintiff.   By letter of June 24, 2005, Defendant informed Plaintiff that it was still awaiting records from Geisinger, Tunkhannock Community Ambulance, Advanced Pain Management Specialists, Tyler Memorial Hospital Radiology, Riverside Rehabilitation and several doctors.   Plaintiff had sent records from many of these sources to Defendant on February 22, 2005.

In July 2006, Defendant inquired by telephone whether a claim for psychiatric injuries was being made.  Plaintiff had made this claim on February 22, 2005.  Defendant's record gathering was ongoing through February 2006.

Defendant submitted expert reports by the January 31, 2006, deadline set by the arbitration panel.  The kidney experts - Doctors Elfenbein and Zappacosta - concluded that Plaintiff suffered from chronic rejection, rather than acute rejection traceable to the accident.  The psychiatrist who performed the IPE, Dr. Toborowlsky, concluded that Plaintiff's psychiatric diagnoses predated the accident and her condition afterwards was very likely little different than it would have been had the accident not happened.  Defendant's rheumatologist, Dr. Kohn, reported that, because he had been forwarded only psychiatric records, his evaluation was somewhat handicapped.  Nevertheless, Dr. Kohn concluded that Plaintiff did not suffer from fibromyalgia as a result of the accident.

Plaintiff's experts were critical of Defendant's experts and concluded that Plaintiff's kidney rejection and fibromyalgia resulted from the accident.

By letter dated February 20, 2006, Defendant requested that the March 28th and 30th dates set for the arbitration hearing be continued, suggesting that the parties mediate the dispute. Plaintiff agreed to mediation by letter of February 23, 2006 - but

only if the mediation could occur before the previously established arbitration dates.

Defendant did not request or conduct a statement under oath from Plaintiff during the pendency of the claim.  Its first request to meet with Plaintiff to assess her condition was made by letter dated February 23, 2006.

The parties attended mediation on March 15, 2006, and reached a mediated settlement in the amount of $285,000 - $15,000 less than the policy limit that had been demanded on March 29, 2005.

**C.   Attorney Selingo's Involvement and Employment Background**[6]

Because Defendant seeks disqualification of Attorney Selingo and his law firm based on the assertions that continued representation will violate Pennsylvania Rules of Professional Conduct addressing conflict of interest and both the Professional Rules and Local Rules of the Middle District of Pennsylvania addressing attorney as witness, (Doc. 27), the facts in this section are pertinent to our discussion.

Attorney David J. Selingo ("Selingo") was Plaintiff's counsel in the underlying UIM claim.  The parties submissions reflect factual disputes about events relating to the underlying claim which are at issue in the current action.  (Doc. 28 at 5-7; Doc. 32

---

[6]   The facts in this subsection are derived from Defendant's S Brief in Support, (Doc. 28 at 5-10), Plaintiff's Brief in Opposition, (Doc. 32 at 5-10), and Defendant's Reply Brief, (Doc. 41-1 at 3-6).

at 5-6.)  The disputes include whether Selingo verbally granted Defendant an extension of time to respond to the initial demand and whether Defendant never requested Plaintiff's statement under oath or Selingo prevented it.  *Id.*

Selingo was an employee of Nationwide's Trial Division for approximately five years: from 1996 to 1998 in Bethlehem, Pennsylvania, and from 1998 to 2001 in Wilkes-Barre, Pennsylvania. He stopped representing Nationwide as in-house counsel on or about May 31, 2001.  Selingo primarily represented Nationwide's insureds, handled some UIM/UM claims and never represented Nationwide in bad faith claims.  Following his employment with Nationwide, Selingo went into private practice and has handled several claims against Nationwide: he has pursued three prior bad faith actions and more than twenty UM/UIM cases against Nationwide.  Nationwide has not sought Selingo's withdrawal or disqualification in any of the prior cases.

In correspondence with Defendant, Selingo acknowledged his experience with the company: when discussing Defendant's failure to evaluate and value the claim within thirty days after a demand was received, Selingo noted in a correspondence dated May 9, 2005, that it was not an isolated instance, based upon his "past experience with Nationwide both as in-house counsel and for the past four years in filing claims against Nationwide." (Doc. 28-18 Ex.P.)

After the filing of the present bad-faith claim, Defendant

10

requested that Selingo voluntarily withdraw as Plaintiff's counsel. (Doc. 28-20 at 4; Doc. 32 Ex. 1.)  As set out in Defendant's correspondence to Selingo dated May 25, 2006, the basis of the initial request was Local Rule 43.1 of the Middle District of Pennsylvania: "Civil Trials, Attorney as Witness."  The conflict of interest basis for the requested disqualification was first asserted in Defendant's instant motion.

**D.   *Procedural History***

Plaintiff filed a Complaint in the Court of Common Pleas of Luzerne County, Pennsylvania, on April 28, 2006, alleging bad faith and breach of contract.  (*See* Doc. 1 Att.)  Defendant removed the action to the United States District Court for the Middle District of Pennsylvania on May 25, 2006.  (Doc. 1.)

The twenty-five examples of wrongful conduct identified in Plaintiff's Complaint fall into three categories: 1) Defendant's failure to promptly and properly investigate and evaluate Plaintiff's claim; 2) Defendant's failure to promptly communicate with Plaintiff at various times on a variety of issues; and 3) Defendant's improper refusal to pay Plaintiff's claim for one year.

Defendant filed a motion to dismiss Plaintiff's Complaint on May 30, 2006, (Doc. 2), and Plaintiff filed a motion to remand on May 31, 2006, (Doc. 3).  By Memorandum and Order dated August 2, 2006, (Doc. 16), this Court denied both motions.

In addition to the motion here considered, several other

11

motions are pending in this case: Plaintiff has filed two motions
to compel the production of documents, (Docs. 22, 43), a Motion to
File Amended Complaint, (Doc. 33), and a Motion to Strike
Defendant's Ninth Affirmative Defense, (Doc. 22).  Because the
disposition of Defendant's motion to disqualify counsel may impact
the remaining motions, their consideration will follow the
resolution of the instant matter.

## II. Discussion

Defendant argues that Selingo and his firm should be
disqualified based on several rules governing attorney conduct.
Specifically, Defendant cites the following: Pennsylvania Rule of
Professional Conduct 1.9, Duties to Former Clients; Pennsylvania
Rule of Professional Conduct 1.10, Imputation of Conflicts of
Interest, General Rule; Pennsylvania Rule of Professional Conduct
3.7, Lawyer as Witness; and Rule 43.1 of the Local Rules of Court
of the Middle District of Pennsylvania, Civil Trials, Attorney as
Witness.[7]

The Third Circuit Court of Appeals provided the following
guidance for a district court considering disqualification:

> Commitment of this matter to the
> district court's discretion means that the
> court should disqualify an attorney only when
> it determines, on the facts of the particular

---

[7]  The Middle District of Pennsylvania has adopted the
Pennsylvania Rules of Professional Conduct except Rule 3.10, a rule
not at issue here.  Local Rule 83.23.2 of the Local Rules of Court
of the Middle District of Pennsylvania.

> case, that disqualification is an appropriate
> means of enforcing the applicable
> disciplinary rule.  It should consider the
> ends that the disciplinary rule is designed
> to serve and any countervailing policies,
> such as permitting a litigant to retain the
> counsel of her choice and enabling attorneys
> to practice without excessive restrictions.

*United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)

(citations omitted).

## A.    *Disqualification Based on Rule 1.9*

Defendant first asserts Selingo should be disqualified

pursuant to Rule 1.9 of the Pennsylvania Rules of Professional

Conduct.

Rule 1.9 provides in pertinent part:

> (a) A lawyer who has formerly
> represented a client in a matter shall not
> thereafter represent another person in the
> same or a substantially related matter in
> which that person's interests are materially
> adverse to the interests of the former client
> unless the former client gives informed
> consent.
>
> . . . .
>
> (c) A lawyer who has formerly
> represented a client in a matter . . . shall
> not thereafter:
>
> (1) use information relating to the
> representation to the disadvantage of the
> former client except as these Rules would
> permit or require with respect to a client,
> or when the information has become generally
> known[.]

Rule 1.9 Pennsylvania Rules of Professional Conduct.  The purposes

of Rule 1.9 are to prevent even the potential that a former

13

client's confidences may be used against him, to maintain public confidence in the integrity of the bar, and to fulfill a client's rightful expectation of the loyalty of his attorney in the matter for which he is attained. *In re Corn Derivatives*, 748 F.2d 157, 162 (3d Cir. 1984).

Disqualification under Rule 1.9(a) often hinges on whether the matter is "substantially related" to the matter involved in the former representation: "[i]f the attorney 'might' have acquired confidential information related to the subject matter of his subsequent representation, then Rule 1.9 would prevent the attorney from representing the second client." *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1204 (E.D. Pa. 1992) (*citing Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972), *cert. denied*, 411 U.S. 986 (1973). The question is not whether the attorney actually acquired confidential information, but whether "confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action." *Realco Services, Inc. v. Holt*, 479 F. Supp. 867, 871 (E.D. Pa. 1979). *Realco* further stated that a lawyer "might have acquired" substantially related information if "(a) the lawyer and the client ought to have talked about particular facts during the course of the representation, or (b) the information is of such a character that it would not have been unusual for it to have been discussed between lawyer and

14

client during their relationship." *Id.* at 871-72.   Courts have
routinely considered three questions when performing the
substantial relationship analysis: 1) What is the nature and scope
of the prior representation? 2) What is the nature and scope of the
current representation? 3) During the prior representation, might
the client have disclosed confidences to his attorney which could
be relevant to the current action which could be detrimental to the
former client in the course of the current litigation?   *See*, *e.g.*,
*Graphix*, 808 F. Supp. At 1204 (citations omitted).

   The parties do not dispute that during his employment in the
Nationwide litigation department, generally Selingo represented
Defendant's insureds but that he also represented Defendant in some
UM/UIM claims.   He did not represent Defendant in any bad faith
claims.

   The present lawsuit is based on claims of bad faith and breach
of contract originating with Defendant's handling of Plaintiff's
underlying UIM claim.   Selingo's employment ended with Nationwide
several years before undertaking Plaintiff's representation.   The
incident giving rise to both the underlying and current actions
took place almost three years after Selingo's employment with
Nationwide ended.

   Because this is a unique factual situation, Nationwide could
not have disclosed factual confidences which could be detrimental
to the company in the course of the current litigation.   Nationwide

may have disclosed strategies for dealing with UIM cases, but this
is a bad faith and breach of contract case - causes of action
Selingo did not defend against while working for Nationwide.  Even
if we consider Selingo's UIM claim representation while at
Nationwide in relation to Plaintiff's underlying UIM action, we
note that courts have distinguished an attorney's knowledge of
techniques and defense theories from facts and confidential
information.  *See*, *e.g.*, *Kaminski Bros. Inc. v. Detroit Diesel
Allison*, 638 F. Supp. 414, 417 (M.D. Pa. 1985); *Focht v. Bryn Mawr
Hospital*, No. 1264, 1992 WL 551116, at *4 (Pa. D. & C. Oct. 22,
1992).  In *Focht* disqualification was sought because the attorney
had represented the hospital in defending against malpractice
claims and subsequently represented a plaintiff in an unrelated
malpractice action against the hospital.  *Focht*, 1992 WL 551116, at
*1.  The court stated that the movant's position "amounts to an
argument that all medical malpractice cases are the same.  This
court is unwilling to accept such a broad characterization.  To do
so would be to bar any defense lawyer from changing practices to
the plaintiff's bar without moving to a different geographical
region."  *Id.* at *4.

As in *Focht*, we conclude that Defendant has not met his burden
of showing that the matter at hand is "substantially related" to
matters in which Selingo represented Nationwide: to find otherwise
in this case would paint too broad a stroke on what matters require

16

disqualification under Rule 1.9.

Our conclusion that Rule 1.9 does not bar Selingo's representation of Plaintiff is also supported by the comments to the rule. "[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." Rule 1.9 Comment 2. The comment elaborates: "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Id.* Thus, based on the guidance provided in the Comments to Rule 1.9, even if we say *arguendo* that this is a case where Selingo is representing Plaintiff in handling a factually distinct problem in a type of claim in which he formerly represented Nationwide, Rule 1.9 would not bar his current representation - the factual distinctions here would counsel against such a finding.

Our final consideration regarding Rule 1.9 is the applicability of the concept of waiver. Specifically, we consider whether Defendant has waived the right to object to Selingo's representation of Plaintiff on the basis of Rule 1.9.

Courts have found that waiver is a valid basis for the denial of a motion to disqualify. *Graphix*, 808 F. Supp. at 1208 (*citing INA Underwrietrs Ins. Co. v. Nalibotsky*, 594 F. Supp. 1199, 1204

(E.D. Pa. 1984).)

> Such a finding is justified . . . when a
> former client was concededly aware of the
> former attorney's representation of an
> adversary but failed to raise an objection
> promptly when he had the opportunity.  In
> [this] circumstance, the person whose
> confidence and secrets are at risk of
> disclosure or misuse is held to have waived
> his right to protection from that risk.

*Nabilotsky*, 594 F. Supp. at 1204.

Here Defendant does not dispute that Selingo has handled
numerous UM/UIM claims against it, including the underling claim in
this case, and never before sought disqualification.  The same is
true for the bad faith claims in which Selingo represented an
insured against Defendant.  We find that these facts alone
constitute waiver.  Bolstering our conclusion is the fact that
Defendant did not raise Rule 1.9 as a basis for disqualification
until it filed this motion on September 22, 2006.  In previous
correspondence with Plaintiff's counsel in May and June of 2006,
Defendant indicated that it requested Selingo's voluntary
withdrawal based on Middle District Local Rule 43.1 which addresses
"Civil Trials, Attorney as Witness." (Doc. 28-20, Doc. 32. Ex. 1.)
Similarly, Defense Counsel Charles Haddick's office contacted the
Court telephonically on August 21, 2006, inquiring about proceeding
with a request for recusal of Plaintiff's counsel pursuant to Rule
43.1 of the local rules.  After being informed that any such
request should be in the form of a motion, it was over one month

18

before Defendant filed the instant motion.  On the basis of
Defendant's failure to raise Rule 1.9 as a basis for
disqualification in any previous action where Selingo represented a
client adversarial to Defendant and Defendant's failure to raise
Rule 1.9 in any communication on the subject in this action until
it filed the instant motion approximately four months after filing
this action, we conclude that, even if Defendant had met its burden
of satisfying the "substantially related" test, it would not be
entitled to the relief sought based on waiver.

In summary, we note that lawyers do not infrequently change
jobs, and as the court in *Graphix* stated, disqualification is a
harsh measure.  808 F. Supp. At 1203.  It is not fair to the
attorney or those who seek a specific attorney's representation to
prohibit representation any time an attorney in private practice
who previously worked for an insurance company represents a
plaintiff against that company.  To apply Rule 1.9 in the fact
situation presented here would work an injustice on both the
litigant and her chosen counsel: here the attorney's employment
ended more than five years ago; in the interim the litigation
section in which the attorney worked has been restructured; there
is no indication in the record that the attorney gained
confidential information detrimental to his former employer in this
case; the insurance company did not complain of Rule 1.9 violations
in either the underlying case or in any other case where the

attorney represented a private client against his former employer; and Defendant has provided no information as to how this case may differ from the previous cases about which Defendant registered no complaint.  For all of these reasons, Defendant's request to disqualify based on Rule 1.9 is denied.

**B.    *Disqualification Based on Local Rule 43.1***

Defendant next argues that Selingo should be disqualified based on Local Rule 43.1 of the Local Rules of Court of the Middle District of Pennsylvania.

The rule provides: "If an attorney becomes a witness on behalf of a client and gives evidence upon the merits of the case the attorney shall forthwith withdraw as trial counsel unless, upon motion, permitted to remain as trial counsel by the court." L.R. 43.1.  The Rule is found in Chapter IX of the Local Rules which is captioned "Trials."

Defendant goes to great lengths to persuade the Court that this rule requires Selingo's immediate disqualification because he will be a discovery witness as well as a trial witness. (Doc. 28 at 21-26.)  We do not concur with Defendant's analysis.  Instead, we conclude that it is appropriate to read Rule 43.1 in the context in which it is presented in the Local Rules - it is a rule in the "Trials" chapter of the Local Rules, and we will interpret "witness" in the rule to mean witness at trial.  Therefore, a disqualification based on Rule 43.1 is premature and may be

20

appropriately raised at time of trial.

**C.    *Disqualification Based on Rule 3.7***

Defendant also contends that Rule 3.7 of the Pennsylvania Rules of Professional Conduct requires disqualification.

Rule 3.7 provides as follows:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> > (1) the testimony relates to an uncontested issue;
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> > (3) disqualification of the lawyer would work substantial hardship on the client;
>
> (b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Rule 3.7 Pennsylvania Rules of Professional Conduct.

Defendant recognizes that the rationale behind the rule is to avoid confusion of the trier of fact that may occur when the lawyer serves as both advocate and witness.  Rule 1.9 Comment 2; (Doc. 28 at 26.)  Defendant also acknowledges the Pennsylvania rule allows an attorney-witness to participate in pretrial activity - disqualification occurs at the time of trial.  (Doc. 28 at 27.)  However, Defendant urges the Court to expand the application of Rule 3.7 and follow those courts which have found that disqualification may be appropriate at earlier stages of the proceedings.  (*Id.* at 28-32.)  We decline to do so.

21

We recognize that "a court may restrain conduct which it feels may develop into a breach of ethics [and] is not bound to sit back and wait for a probability to ripen into a certainty." *Maritrans v. Pepper, Hamilton, Scheetz*, 602 A.2d 1277, 1284 (1992) (*quoting United States v. RMI Co.*, 467 F. Supp. 915, 923 (W.D. Pa. 1979)). However, the rules addressing attorney as witness contemplate a determination of the need for disqualification at the time of trial – an event scheduled in this case for May 2007.  We will entertain disqualification at the time of trial if Defendant again raises the issue.

**D.   *Disqualification Based on Rule 1.10***

Finally, Defendant argues that Selingo's firm should be disqualified pursuant to the provisions of Rule 1.10 of the Pennsylvania Rules of Professional Conduct which addresses the "Imputation of Conflicts of Interest: General Rule."  (Doc. 28 at 33.)

Rule 1.10 relates to conflicts of interest identified in Rule 1.7 and Rule 1.9.  Because we have concluded that Rule 1.9 does not form a basis for disqualification in this case (and Rule 1.7 is not at issue), Rule 1.10 is not applicable and cannot form a basis for disqualification of Selingo's firm.

## III. Conclusion

For the reasons discussed above, Nationwide Mutual Insurance Company's Motion to Disqualify David J. Selingo, Esquire and

22

Attorney Selingo's Firm, (Doc. 27), is DENIED.   An appropriate

Order follows.


                                    S/Richard P. Conaboy
                                    RICHARD P. CONABOY
                                    United States District Judge


DATED: November 6, 2006 _____

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA JAVORSKI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 3:06-CV-1071 |
| | : | |
| v. | : | |
| | : | (JUDGE CONABOY) |
| NATIONWIDE MUTUAL | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

_____

## ORDER

AND NOW, THIS 6th DAY OF NOVEMBER 2006, FOR THE REASONS SET OUT IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1.     Nationwide Mutual Insurance Company's Motion to Disqualify David J. Selingo, Esquire and Attorney Selingo's Firm, (Doc. 27), is DENIED;

2.     The Clerk of Court is directed to mark the docket.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

24